# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 1043 | **DATE** | 3/19/2004 |
| **CASE TITLE** | United States of America' vs. Reid Selseth | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion to Dismiss his Indictment in its entirety is GRANTED. Status hearing stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 19 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
MAR 1 9 2004
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES OF AMERICA,

        Plaintiff,

v.

REID SELSETH,

        Defendant.

Case No. 03 CR 1043

Hon. Harry D. Leinenweber

DOCKETED
MAR 1 9 2004

## MEMORANDUM OPINION AND ORDER

Defendant Reid Selseth ("Selseth") was indicted on five counts of violations of 18 U.S.C. 2252(a) and 18 U.S.C. 2252(d). Section 2252(a) prohibits production of child pornography when the defendant a) "knows or has reason to know" that the depiction will be transported in interstate commerce; b) the visual depiction has actually been transported in interstate commerce; or c) the visual depiction was produced using materials that were transported in interstate commerce. Section 2252(d) is more limited, prohibiting only the possession of visual depictions of child pornography that actually travel in interstate commerce or that the accused intended would travel in interstate commerce. Selseth now moves to dismiss the indictment in its entirely, on the grounds that the conduct alleged did not violate § 2252(d), and that § 2252(a) is unconstitutional as applied to him. The government, in response,

has agreed to strike all references in the indictment to § 2252(d), but contends that under Seventh Circuit precedent, Selseth has no constitutional claim concerning § 2252(a). For the reasons stated below, the Court **GRANTS** the effectively agreed motion to strike all references to § 2252(d) in the indictment. The Court also **GRANTS** Selseth's motion to strike the indictment in its entirety.

### I. FACTUAL BACKGROUND

On April 7, 1999, a Grand Jury indicted Selseth on five counts of violating 18 U.S.C. § 2252(a) and 18 U.S.C. § 2252(d). Each indictment concerned a single ".jpg" document (a file-format used for storing graphical depictions) containing a single image. Selseth contends, and the government does not deny, that these images were produced in the State of Illinois more than five years ago. Since that time, the images have never left the State of Illinois. The sole alleged minor depicted in the images lived in Illinois when the images were produced, and did not cross state lines at any time to facilitate production of the images. Furthermore, the government does not contend that Selseth ever sought to transport this disk out of the State of Illinois. Therefore, with respect to the depictions themselves, the government acknowledges no hook to interstate commerce.

Instead, the government attempts to prosecute Selseth based on the medium containing the five images. Specifically, the images

were found on a single scan card or computer disk that at some time traveled to the United States following its manufacture in Japan. At the time it arrived in Illinois, the scan card/computer disk was blank and perfectly legal to purchase and transport in interstate commerce. Thus, this disk constitutes the government sole jurisdictional link to § 2252(a), as it was the *only* thing associated with the visual depictions that moved in interstate commerce (albeit at a time when the disk contained no information at all). For this reason, the government conceded to Selseth's request to strike § 2252(d) from the indictment.

## II. **STANDARD OF REVIEW**

A proper indictment serves three functions. It states all elements of the charged offense, informs defendants of the nature of the charge, and enables defendants to plead double jeopardy as a bar to repeated prosecution for the same offense. *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985). The indictment is not tested on the strengths or weaknesses of the government's case. It is examined solely for its sufficiency in charging the offense. *United States v. Risk*, 843 F. 2d 1059, 1061 (7th Cir. 1988).

## III. **DISCUSSION**

In his reply brief, Selseth conceded that, under *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000), § 2252(a) on its face does not constitute an unconstitutional exercise of Congress's Commerce

Power. Therefore, the only issue left for the Court to address is whether § 2252(a) is unconstitutional *as applied* to Selseth.

To serve as a valid exercise of Congress's Commerce Power, a statute must engender to regulate: (1) the channels of interstate commerce; or (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; or (3) activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558-559 (1995).

The aforementioned *Angle* case serves as one-half of the Seventh Circuit's recent authority on § 2252(a)'s constitutionality. In *Angle*, the defendant was stopped by U.S. Customs at the United States-Mexico border. During this stop, Customs found several videotapes containing child pornography that the defendant was carrying across the border from Mexico. A subsequent search of the defendant's home uncovered additional videotapes that had unquestionably traveled in interstate commerce.

Despite the facts of *Angle*, which demonstrate violations of § 2252(a) on multiple grounds, the Seventh Circuit decided to uphold § 2252(a)'s constitutionality on very broad grounds. The Seventh Circuit characterized § 2252(a) as a valid "category three" regulation, the type defined by *Lopez* as regulating activities that substantially affect interstate commerce under a so-called "market theory." Specifically, the Seventh Circuit adopted the reasoning

- 4 -

of the Third Circuit in *United States v. Rodia*, 194 F.3d 465, 477 (3rd Cir. 1999), quoting with approval *Rodia*'s statement that:

> Some pornographers manufacture, possess, and use child pornography exclusively within the boundaries of a state, and often only within the boundaries of their own property. It is unrealistic to think that those pornographers will be content with their own supply, hence they will likely wish to explore new or additional pornographic photographs of children. Many of those pornographers will look to the interstate market [**28] as a source of new material, whether through mail order catalogs or through the Internet. Therefore, the possession of "home grown" pornography may well stimulate a further interest in pornography that immediately or eventually animates demand for interstate pornography. It is also reasonable to believe the related proposition that discouraging the intrastate possession of pornography [*338] will cause some of these child pornographers to leave the realm of child pornography completely, which in turn will reduce the interstate demand for pornography.

*United States v. Angle*, 234 F.3d at 338.

Using *Rodia*'s reasoning, the Seventh Circuit held that "to effectively regulate child pornography, Congress could have legitimately found it necessary to have federal control over both the interstate and local versions of the activity." *Id.* at 338. Accordingly, the Seventh Circuit declared "because § 2252(a)(4)(B) prohibits intrastate activity that is substantially related to the closely regulated interstate market of child pornography, we conclude that the statute is a valid exercise of Congress's

- 5 -

Commerce Clause power." In doing so, however, the Seventh Circuit upheld § 2252(a) only against a facial challenge. In speaking of the jurisdictional hook, the Seventh Circuit favorable referenced the First and Eight Circuits' notion of engaging in a "case by case inquiry" to see whether "the pornography in question affects interstate commerce." *Id.* at 336. As applied to the facts here then, it seems that the relevant *Angle* inquiry concerns whether the activity Selseth engaged in was "substantially related to the closely regulated interstate market of child pornography."

Since *Angle*, the Seventh Circuit has only once opined on the constitutionality of § 2252(a). In *United States v. Schaffner*, 258 F.3d 675 (7th Cir. 2001), the Seventh Circuit also upheld the constitutionality of § 2252(a), but it did not rely on the reasoning of *Angle* in doing so. The defendant in *Schaffner* was charged with taking a single pornographic photograph of a fifteen year old girl, and then transporting it across state lines. There was no "commerce" in the usual sense involved in this transportation. The *Schaffner* defendant merely snapped the photo of the underage girl while they visited a neighboring state, then drove the photo back to his house – crossing state lines. Applying the *Lopez* three-category test, the *Schaffner* Court upheld § 2252(a) as applied to the defendant as both a "category one" ("channels" of interstate commerce) and "category two" ("things" in interstate

commerce) regulation because the photograph in question actually crossed state lines. However, with respect to its discussion of "category three" (substantially effects interstate commerce), the Seventh Circuit neither quoted or relied upon the supposedly precedential *Angle* decision, nor its "market" theory. Instead, *Schaffner* held that "the jurisdictional element makes federal criminal responsibility turn on the actual movement of the pornographic item in interstate commerce. . . . The criminal activity is inducing a minor to participate in the taking of the photograph *and* the photograph's movement in interstate commerce." *Id.* at 683. Although *Schaffner* does not specifically overrule or limit *Angle*, *Schaffner* pegged constitutional jurisdiction to the actual movement of the photograph across state-lines.

Note that both *Schaffner* and *Angle* involved fact patterns where the at-issue pornographic images crossed state lines. Therefore, neither involved a case such as the current one – where the pornographic images remained exclusively in-state, and only the materials used to produce the pornography passed through interstate commerce. As such, one cannot distinguish *Schaffner* and *Angle* based on fact pattern. One can speculate that *Schaffner* did not discuss the constitutionality of § 2252(a) as applied strictly to materials in inner-state commerce because it had no need to do so. Although technically correct, this ignores *Schaffner*'s repeated

- 7 -

emphasis on the importance of the photograph crossing state-lines. Thus, the apparent contradiction in two opinion's holding regarding the extent of § 2252(a)'s constitutionality remains.

Although *Schaffner* gives a passing citation to *Angle*, it neither bases its reasoning upon it (despite ample factual opportunity) nor specifically overturns it. The law is further clouded by the fact that not a single Seventh Circuit District Court has cited to *Schaffner* on the interstate commerce question, and only *United States v. Brown*, 2001 U.S. Dist. LEXIS 25664 (W.D. Wisc. 2001) - which predated *Schaffner* by three months - has followed *Angle*.

The Court is thus faced with the Herculian task of attempting to reconcile these two opinions. After careful consideration, it endeavors to do so in the following way. If a defendant possesses child pornography that has crossed state lines, then § 2252(a) is best viewed as either a permissible category 1 or category 2 regulation. If, however, the alleged child pornography has not crossed state lines, than § 2252(a) is constitutional only as a category 3 regulation under a "market theory." This requires a conditional inquiry into whether the intrastate activity engaged in by the defendant is "substantially related to the closely regulated interstate market of child pornography." Although the Seventh Circuit has never specified, the facts of *Angle* suggest that Courts

should base such an inquiry on factors such as the quantity of visual depictions possessed, the number of individual victims displayed in the depictions, the relationship between the victims and the defendant, and whether the defendant has actively engaged in intrastate commerce to acquire the depictions. Under such reasoning, a Court's factual finding that, for example, the defendant possessed a small number of depictions of one or few victims, knew the victims personally, and never traded, bought or sold any depictions might suggest that no substantial likelihood exists that such a defendant would one day turn to the interstate market to satisfy his demand for child pornography. Conversely, a defendant who exchanged numerous depictions of numerous intrastate strangers would probably find the intrastate market insufficient to satiate his urges, and eventually decide to pursue interstate pornography.

Under such a rubric, § 2252(a) is clearly unconstitutional as applied to Selseth, based on the available factual record. Selseth possessed only five visual depictions of a single minor victim. The government has made no effort to demonstrate that Selseth participated even in intrastate commerce, and has certainly provided the Court with no reason to infer that Selseth, through market theory, would one day likely proceed to engage in interstate commerce to obtain child pornography. The government's sole link

to interstate commerce came through the blank computer disk Selseth used to store these images.

Such a reading and application of *Schaffner* and *Angle* would also harmonize Seventh Circuit law with that of the Sixth and Ninth Circuits, both of which have held § 2252(a) unconstitutional as applied to particular defendants under circumstances, such as this, in which the pornographic images themselves did not travel in interstate commerce, but the materials used to produce them did. In *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), the Sixth Circuit found § 2252(a) unconstitutional as applied to a 26 year-old defendant who took and developed a pornographic photographs of his 17 year-old girlfriend for personal use, where the only jurisdictional link to interstate commerce rested on the fact that the photographic paper containing the photographs had an origin outside of the State of Michigan. The defendant in *Corp* was not involved in the sharing or distribution of the pictures in question. On the basis of those facts, the Sixth Circuit concluded that "Corp's activity was not of a type demonstrated substantially to be connected or related to interstate commerce." *Id.* at 332.

Similarly, in *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), the Ninth Circuit found § 2252(a) unconstitutional as applied to a defendant who produced and possessed a single sexually-explicit image of his own daughter. Sharply criticizing

- 10 -

the "market" theory that formed the basis of *Rodia* and *Angle*, the Ninth Circuit wrote "we see no more justification for assuming that the possessor of a 'home-grown' photograph of one's one child will ultimately enter the interstate pornography market as an addict than there is to assume that the possessor of a single marijuana cigarette will inevitably turn into a full-time heroin junkie." *Id.* at 1122. Further, in rejecting that McCoy's activities were substantially-related to interstate commerce, the Court concluded that McCoy's venture "was purely non-economic and non-commercial, and had no connection with or effect on any national or international commercial child pornography market, substantial or otherwise. The picture . . . did not 'compete' with other depictions exchanged, bought, or sold in the illicit market for child pornography and did not affect their availability or price." *Id.* Consequently, "simple intrastate possession of home-grown child pornography not intended for distribution or exchange is not in any sense of the phrase, economic activity." *Id.* (internal citation omitted).

To date, no Seventh Circuit case (at either the Circuit or District level) have cited or discussed the decisions in *McCoy* and *Corp*. However, neither of these cases as applied necessarily contradict *Angle*, and certainly not *Schaffner*. As noted above, *Angle* prohibits only activity "substantially related to the closely

regulated interstate market for child pornography." It is possible that, had *McCoy* and *Corp* come up before the Seventh Circuit, and the Seventh Circuit elected to use the *Angle* standard, that it still would have ruled exactly the same - given the peculiar fact circumstances in each case. After all, the "victims" in *McCoy* and *Corp* were the defendants' own girlfriend and daughter, respectively. In addition, the pictures were strictly for personal use, and defendants neither traded or intended to trade them on even an intrastate market. It is therefore likely that these defendants, would not meet even the *Angle* threshold of engaging in conduct that bears a "substantial relationship" to the "interstate market."

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's motion to dismiss his indictment in its entirety.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: March 19, 2004