Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 1043 | **DATE** | 6/17/2004 |
| **CASE TITLE** | United States of America vs. Reid Selseth | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ .
(3) ☐ Answer brief to motion due___ ___. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7 July 04 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court hereby GRANTS the government's motion to reconsider, VACATES AND REVERSES its previous ruling, and DENIES Selseth's motion to dismiss his indictment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 18 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 33 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED RECEIVED
JUN 17 2004  JUN 17 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE
DOCKETED
JUN 18 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 03 CR 1043 |
| v. | Hon. Harry D. Leinenweber |
| REID SELSETH, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

On April 7, 1999, a Grand Jury indicted Defendant Reid Selseth (hereinafter, "Selseth") on five counts of violations of the child pornography statutes 18 U.S.C. § 2251(a) (hereinafter, "§ 2251(a)") and 18 U.S.C. § 2251(d). Selseth moved to dismiss the indictment in its entirety, on the grounds that the conduct alleged did not violate § 2251(d), and that § 2251(a) stands unconstitutional as applied to him. In response to Selseth's motion, the government agreed to strike all references in the indictment to § 2251(d), but contended that under Seventh Circuit precedent, Selseth had no constitutional claim concerning § 2251(a). On March 19, 2004, the Court granted Selseth's motion to dismiss his indictment in its entirety. Shortly thereafter, the government moved for the Court to reconsider its ruling as to § 2251(a), and the Court agreed to receive full briefing on the government's motion.

### I. FACTUAL BACKGROUND

The Court compiled the following factual background from both the indictment and representations made to the Court by either

33

Selseth or the government, which the other party either admits or fails to dispute.

### A. The Indictment

The indictment at issue charges Selseth with five violations of § 2251(a). Under § 2251(a), a person faces criminal liability if he induces, coerces or entices a minor to engage in "any sexually explicit condition for the purpose of producing any visual depiction of such conduct," provided that:

> . . . such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

The present indictment alleges that Selseth participated in producing five ".jpg" documents (a file format used for storing graphical depictions), with each document containing a single image. The images were allegedly produced in the State of Illinois more than five years ago. Since that time, the images have never left the State of Illinois. The images each depict a single Illinois minor child exclusively. Therefore, with respect to the depictions themselves, the government acknowledges no hook to interstate commerce.

Instead, the government seeks to prosecute Selseth based on the medium containing the five images. Specifically, the images

were found on a single scan card or computer disk that at some time traveled to the United States following its manufacture in Japan. At the time the computer disk arrived in Illinois, it was blank and perfectly legal to purchase and transport in interstate commerce. This disk constitutes the government's sole jurisdictional link to § 2251(a), as it was the only thing associated with the visual depictions that moved in interstate commerce (albeit at a time when the disk contained no information at all). For this reason, the government acceded to Selseth's request to strike § 2251(d) from the indictment.

### B. The Government's Supplemental Evidence

The government requests the opportunity to supplement the factual record by providing the Court with an *in camera* inspection of evidence retrieved from Selseth's home which did not form part of his indictment. The government contends that, although the indictment concerned just five pictures of a single minor child, Selseth actually possessed "thousands of images of child pornography . . . in various forms, including magazines, photographs, disks, and copies of downloaded images – many of which . . . traveled in interstate commerce." The government contends that it selected the at-issue images because it knew the identity of the child depicted in these images, and believed that this child "was psychologically capable of testifying in the grand jury." In so doing, the government felt that an indictment based

on these images would provide it with the best shot of meeting its legal burden of proving that Selseth possessed pornographic images of a real minor, and not merely "virtual," computer-generated images of nonexistent people.

## II. **STANDARD OF REVIEW**

A proper indictment serves three functions. It states all elements of the charged offense, informs defendants of the nature of the charge, and enables defendants to plead double jeopardy as a bar to repeated prosecution for the same offense. *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985). The indictment is not tested on the strengths or weaknesses of the government's case. It is examined solely for its sufficiency in charging the offense. *United States v. Risk*, 843 F. 2d 1059, 1061 (7th Cir. 1988).

## III. **DISCUSSION**

The government first challenges this Court's ruling by arguing that, in adjudicating commerce clause issues, courts lack the power to declare statutes unconstitutional as applied to particular defendants. For support, the government cites *Maryland v. Wirtz*, 392 U.S. 183, 192-193 (1968) and *United States v. Lopez*, 514 U.S. 549, 558 (1995). In particular, the government notes that *Lopez* quoted *Wirtz*'s language that "the Court has said only that where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id.* Accordingly, the

government contends that *Wirtz* and *Lopez* bars any individual defendant from claiming that a federal statute is unconstitutional as-applied to him due to the failure to link his conduct sufficiently to interstate commerce.

The government's sweeping interpretation of *Lopez* finds no support in either *Lopez* or its progeny. The Court notes that the government cites *Lopez* out of context, and that the full citation stands inapposite to the government's position here. Specifically, *Lopez* actually referenced *Wirtz* to support its position that:

> In response to the dissent's warnings that the Court was powerless to enforce the limitations on Congress' commerce powers because "all activities affecting commerce, even in the minutest degree, [*Wickard*], may be regulated and controlled by Congress," the *Wirtz* Court replied that the dissent had misread precedent as "neither here nor in *Wickard* has the Court declared that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities," Rather, "the Court has said only that where a general regulatory statute bears a substantial relation to commerce, the de *minimis* character of individual instances arising under that statute is of no consequence."

Id. at 558 (internal citations omitted).

Immediately thereafter, *Lopez* laid out the framework for adjudicating the constitutional requirements for an interstate commerce nexus, holding:

> Consistent with this structure, we have identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of

- 5 -

> the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

*Id.* at 558-559 (internal citations omitted).

In so doing, *Lopez* does not stand for the extremely broad proposition that one can never challenge a statute as unconstitutional as applied due to a lack of an interstate commerce nexus. Rather, *Lopez* merely holds that a statute cannot tether its constitutionality to "*de minimis*" impacts upon commerce. As a result, since *Lopez* federal circuits have thrice found statutes unconstitutional as applied to particular defendants. *See United States v. Stewart*, 348 F.3d 1132 (9th Cir. 2004)(defendant's possession of a machine gun, in violation of 18 U.S.C. § 922(o), did not substantially affect interstate commerce); *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003)(defendant's possession of child pornography, in violation of 18 U.S.C. § 2252(a)(B)(4), did not substantially affect interstate commerce); *United States v. Corp*, 236 F.3d 325 (7th Cir. 2001) (defendant's possession of child pornography, in violation of 18 U.S.C. § 2252(a)(B)(4), did not substantially affect interstate commerce). Other courts (including the Seventh Circuit), while not necessarily finding statutes

unconstitutional as applied, nevertheless engaged in the constitutional inquiry that the government claims *Lopez* foreclosed. *United States v. Singletary*, 268 F.3d 196 (3rd Cir. 2001); *United States v. Schaffner*, 258 F.3d 675 (7th Cir. 2001); *United States v. McAllister*, 77 F.3d 387 (11th Cir. 1996); *United States v. Pierson*, 139 F.3d 501 (5th Cir. 1998); *United States v. Thomas*, 114 F.3d 228 (D.C. Cir. 1997); *United States v. Farmer*, 73 F.3d 836 (8th Cir. 1996). In addition, the Supreme Court itself, while technically not reaching the constitutional issue, interpreted 18 U.S.C. § 844(i), the federal arson statute, as not reaching owner-occupied residences, because it reasoned that these buildings fail to affect commerce substantially. *See Jones v. United States*, 529 U.S. 848 (2000).

Next, the government argues that *United States v. Angle*, 234 F.3d 326, 338 (7th Cir. 2000), "is precedential with respect to the constitutionality of Section 2251(a)" and therefore bars any finding that § 2251(a) is unconstitutional as applied to Selaeth. In *Angle*, the Seventh Circuit denied a facial challenge to the constitutionality of 18 U.S.C. § 2252(a)(4)(B), a companion statute to § 2251(a). Here, part of the government's argument stems from its rejected contention above that *Lopez* prevents courts from declaring a statute unconstitutional as applied to a particular defendant for failure to establish an interstate commerce nexus. As the Court disagrees with the government's stated position on

this issue, it need not again consider that argument in the context of *Angle*.

However, the government also contends that, even if *Lopez* permits defendants to file as-applied challenges, *Angle* forecloses such a challenge in the context of § 2251(a). Accordingly, the government asks the Court to view *Angle*'s facial ruling with respect to § 2252(a)(4)(B) as precedent barring Selseth's as-applied challenge to § 2251(a). The Court declines to do so, in light of *United States v. Schaffner*, 258 F.3d 675 (7th Cir. 2001). In *Schaffner*, as the Court explains below, the Seventh Circuit effectively ignored *Angle*'s reasoning within the context of an as-applied challenge to § 2251(a). In the Court's view, *Schaffner*'s failure to discuss *Angle*'s reasoning suffices to reject the government's view that *Angle* controls this case. Nevertheless, *Schaffner* never disfavored *Angle*, and implicitly distinguished itself from *Angle* based on factual circumstances present in *Schaffner*, but absent here. Therefore, the Court believes that although *Angle* does not qualify as precedent, it nevertheless serves as influential authority. As such, the Court believes it appropriate to address Selseth's motion under the *Angle* framework.

In *Angle*, the Seventh Circuit recognized § 2252(a)(4)(B) as a valid "category three" statute under *Lopez*, i.e., one regulating activities that "substantially affect interstate commerce." See *Angle*, 234 F.3d at 335, 337. To do so, the Seventh Circuit adopted

the "market theory" reasoning of the Third Circuit in *United States v. Rodia*, 194 F.3d 465, 477 (3rd Cir. 1999), quoting with approval *Rodia's* statement that:

> Some pornographers manufacture, possess, and use child pornography exclusively within the boundaries of a state, and often only within the boundaries of their own property. It is unrealistic to think that those pornographers will be content with their own supply, hence they will likely wish to explore new or additional pornographic photographs of children. Many of those pornographers will look to the interstate market as a source of new material, whether through mail order catalogs or through the Internet. Therefore, the possession of "home grown" pornography may well stimulate a further interest in pornography that immediately or eventually animates demand for interstate pornography. It is also reasonable to believe the related proposition that discouraging the intrastate possession of pornography will cause some of these child pornographers to leave the realm of child pornography completely, which in turn will reduce the interstate demand for pornography.

*United States v. Angle*, 234 F.3d at 338.

Based on *Rodia*, the Seventh Circuit held that "to effectively regulate child pornography, Congress could have legitimately found it necessary to have federal control over both the interstate and local versions of the activity." *Id.*

As such, the Seventh Circuit upheld § 2252(a)(4)(B) "because § 2254(a)(4)(B) prohibits intrastate activity that is substantially related to the closely regulated interstate market of child pornography." *Id.*

- 9 -

However, in *Angle* the Seventh Circuit upheld § 2252(a)(4)(B) only against a facial challenge. Although the Seventh Circuit in *Angle* did not directly address theoretical as-applied challenges, it hinted that it might view such challenges favorably under certain circumstances. For example, the Seventh Circuit admitted:

> . . . we have our doubts whether § 2252(a)(4)(B)'s jurisdictional element (particularly with respect to precursor materials) guarantees that the activity regulated (intrastate possession of child pornography) substantially affects interstate commerce.

Id. at 337.

Although *Angle* did not reach this issue due to the facial nature of the defendant's challenge, its skepticism towards the regulation of "precursor materials" suggests that – under the *Angle* framework – the Seventh Circuit might possibly view the present as-applied challenge favorably.

Similarly hinting at the legitimacy of an as-applied challenge, *Angle* cited the First and Eighth Circuits for the proposition that "§ 2252(a)(4)(B) has a jurisdictional element which ensures, through a case-by-case inquiry, that the pornography in question affects interstate commerce." *Id.* at 336. *Angle* never explicitly adopts the "case-by-case inquiry" language as binding law. However, the notion of conducting a case-by-case inquiry derives from *Lopez* itself, and the Seventh Circuit has explicitly applied it in gun possession cases. *See Lopez*, 514 U.S. at 562;

*United States v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995); *United States v. Kenney*, 91 F.3d 884, 887 (7th Cir. 1996). Furthermore, both the government and Selseth appear to recognize the case-by-case inquiry as binding Seventh Circuit law, although they differ somewhat in their interpretations of what it requires. Therefore, this Court finds undertaking such a "case-by-case inquiry" useful, and the proper way to consider *Angle* in reference to this case. As such, the Court now turns to examining the parties' interpretations of what this case-by-case inquiry demands.

In its opening brief, the government originally appeared to argue for what Selseth properly characterized as an "all or nothing" approach to the case-by-case inquiry, contending that:

> . . . the case by case inquiry to which the *Angle* court referred was the nexus to interstate commerce that Section 2252(a)(4)(B) requires, namely, that the medium that contains child pornography has been shipped or transported in interstate or foreign commerce or was produced using materials which have been mailed or so shipped or transported by any means including by computer.

Gov. Br. p.10-11.

Under this formulation, the case-by-case inquiry seemingly consists merely of a recitation of the standard requirement that an indictment state all elements of the offense.

In its response brief, the government clarified its position, acknowledging that "*Angle* also suggests that the mere presence of a jurisdictional element will not automatically guarantee that a

- 11 -

statute will survive a Commerce Clause challenge." Gov. Rep. Br., p.6, n.5. Accordingly, the government now contends that "the case-by-case inquiry refers to a determination that the conduct that subjects the defendant to prosecution have *some* impact on interstate commerce – not a *substantial* effect on interstate commerce." *Id.* p.5. (internal citation omitted, emphasis in original). In so doing, the government concedes that "the government must establish a case-by-case effect on interstate commerce even in prosecutions of interstate possession." *Id.* p.6.

By clarifying its formulation of the case-by-case inquiry, the government mostly harmonized its view with Selseth's. The sole remaining area of possible disagreement concerns whether or not the case-by-case inquiry requires proving "substantial effects" on commerce, or simply "effects" on commerce. The Court acknowledges that, given the fact that the government waited until its reply brief to state its position succinctly, Selseth lacked an adequate opportunity to challenge the government's position that the prosecution need not prove "substantial effects" on commerce. Due to its eventual ruling in this opinion, the Court does not need to answer this question right now, as the Court now considers it inappropriate to dismiss the indictment without first providing the government with an opportunity to prove its case at trial.

Instead, the Court will address the standard of the precise burden of proof it will require the government to meet in the

context of court's instructions to the jury. By delaying resolution of this issue, the Court endeavors to provide both parties with sufficient time to prepare and present arguments on the proper legal burden to assign the government. Therefore, the Court will hear supplementary briefing by both parties on this question prior to deciding whether to instruct the jury that it must find "substantial effects" or merely "effects" on commerce.

Applying its interpretation of the case-by-case inquiry to Selseth, the government argues that Selseth's indictment is constitutional under the "market theory" argument found in *Rodia* and *Angle*. Specifically, the government contends that:

> . . . the constitutionality of Section 2251(a) is based on the fact that the child pornography manufactured from such materials stimulates demand for child pornography and supports the national child pornography market, which substantially affects interstate commerce.

Gov. Rep. Br. p.7.

While true with respect to § 2252(a)(4)(B), and possibly true with respect to § 2251(a)(*Schaffner*, as discussed below, did not apply "market theory" in the § 2251(a) context, making the application of it here an extension of *Angle*), the Court believes that this very argument demonstrates that Selseth's indictment, by itself, *cannot* survive a case-by-case inquiry. The Court notes that the government does not allege that Selseth manufactured the pornography at issue for commercial purposes. Nor does the

- 13 -

government allege that Selseth ever traded, copied or moved the at-issue pornography from outside of his own home, much less that he removed it from the State of Illinois. The government thus asks the Court to hold that Selseth's manufacturing of a discrete number of photographs, of a single in-state minor, when the photographs never even left Selseth's own house, somehow "supports the national pornography market, which substantially affects interstate commerce." In light of the limited allegations in the indictment, and *Angle*'s skepticism about basing a jurisdictional link solely on "precursor materials," See *Angle*, 234 F.3d at 337, the Court believes that the indictment's allegations, while abhorrent, serve as a prime example of the type of "noneconomic, criminal" conduct that cannot survive interstate commerce challenges. *United States v. Morrison*, 529 U.S. 598, 610 (2000). Therefore, under an *Angle* framework, the indictment, without more, cannot survive.

The government, however, does provide more. Specifically, the government hopes to cure the indictment's failings under the case-by-case inquiry by asking the Court to consider, as supplemental evidence, pornographic materials retrieved from Selseth's home for which the government chose not to prosecute him. As discussed in the factual background, the government contends that, although the indictment concerned just five pictures of a single minor child, Selseth actually possessed "thousands of images of child pornography . . . in various forms, including magazines,

photographs, disks, and copies of downloaded images - many of which . . . traveled in interstate commerce." Gov. Br. p.12. The government argues that the conduct alleged in the indictment, when viewed within the context of Selseth's behavior as demonstrated by this supplemental evidence, establishes the particularized link to interstate commerce.

The Court declined the government's request that it review, *in camera*, the additional evidence collected from Selseth's residence. The Court did so because it believes that, at this stage, the government need not present any actual evidence to support its assertions. Rather, the Court holds that the government's allegations of this substantial quantity of supplemental material suffices to meet the government's burden, under the case-by-case inquiry, to at least place Selseth on trial. The Court notes that it believes a trial is proper regardless of whether it ultimately rules that the inquiry requires the government to ultimately show "substantial effects" or merely "effects" on interstate commerce.

In particular, the Court notes that *Angle* permits establishing a commerce link via "market theory." This Court's original opinion depended on the entirety of the allegations presented to the Court at that time: that Selseth possessed five pornographic photographs of a single in-state minor. The Court reasoned that, even under market theory, the government had not established a sufficient nexus betwixt Selseth's conduct and interstate commerce.

Now, however, the government has alleged that Selseth has repeatedly resorted to that market. Having engaged in this market, the possibility certainly exists that Selseth would use the at-issue pornographic depictions for market-related activity. This could, for example, include trading the depictions for other pornographic material through contacts he made in the interstate commerce market.

Furthermore, the fact that Selseth allegedly took these photographs more than five years ago, and now has allegedly accumulated a substantial collection of similar images, exemplifies the "market theory" rationale for prohibiting intrastate possession of child pornography in the first place: the fear that "[i]t is unrealistic to think that those pornographers will be content with their own supply, hence they will likely wish to explore new or additional pornographic photographs of children." *Angle*, 234 F.3d at 338. Consequently, under an *Angle*-style "market theory" case-by-case analysis, the new alleged evidence suffices to permit the indictment to stand.

As such, the Court finds that *Angle*, as interpreted by both parties and this Court, would call for not dismissing Selseth's indictment at the present time. However, at trial the government will need to produce and admit evidence that establishes the connection between Selseth's conduct and effects, possibly substantial effects, on interstate commerce.

That being said, the Court does not believe it correct to view *Angle* as conclusively binding here. As noted above, *Angle* concerned solely § 2252(a)(4)(B). Section 2251(a), the statute present in Selseth's indictment, contains nearly the exact same jurisdictional language as § 2252(a)(4)(B). However, in *United States v. Schaffner*, 258 F.3d 675 (7th Cir. 2001), the Seventh Circuit on the surface appears to elect to treat these statutes differently. Specifically, in *Schaffner*, the Seventh Circuit upheld § 2251(a) against an as-applied challenge as a "category one" and "category two" regulation, but held that category three was "not directly applicable." *Id.* at 682. In so doing, *Scaffner* ignored *Angle*'s "market theory" reasoning. Therefore, for the Court to properly extend *Angle*'s "market theory" analysis to § 2251(a), the Court must examine *Schaffner* to determine why it ignored "market theory," and whether this omission has any substantive value.

In *Schaffner*, the defendant took a single pornographic photograph of a fifteen-year-old girl, and then transported it across state lines. *Schaffner* therefore involved a case where the pornography at-issue clearly crossed state lines, even though it did not concern "commerce," in the usual sense of the word.

Based on these facts, *Schaffner*, unlike *Angle*, found that § 2251(a) qualified under categories one and two. Having found § 2251(a) constitutional as-applied to the particular factual

circumstances at-issue, *Schaffner* had no reason to justify § 2251(a) under category three, and therefore no reason to discuss market theory. Accordingly, the Court believes that *Schaffner* implicitly distinguished itself from *Angle* solely due to the factual circumstances underlying the as-applied challenge *Schaffner* considered. As a result, *Schaffner*'s failure to apply "market theory" to § 2251(a) is meaningless.

Having addressed the concern that *Schaffner* bars application of "market theory," the Court now turns to the question of whether it can legitimately extend "market theory" from *Angle* to § 2251(a). For this purpose, the Court notes that the two statutes proscribe the related activities of intrastate possession and production of child pornography, respectively. Indeed, the two statutes contain almost the exact same jurisdictional language as § 2251(a), differing only in inconsequential grammar choices.[1] Therefore, it would be utterly nonsensical for the Court to apply different commerce clause analyses to these two statutes.

The Court therefore holds that *Angle*'s "market theory" case-by-case inquiry applies to Selseth's as-applied challenge to § 2251(a). Based on this inquiry, the Court feels it inappropriate

---

[1] 18 U.S.C. § 2252(a)(4)(b) bars possession of child pornography "which was produced using materials which have been mailed or so shipped or transported, by any means including by computer." As stated above, 18 U.S.C. § 2251(a) proscribes production of child pornography was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means."

to dismiss Selseth's indictment at this stage of the proceedings. The Court cannot endeavor to guess, much less rule, on what type and kinds of evidence the government will successfully admit at trial. If the government alleges that it possesses evidence that would enable it to prove at trial that Selseth's conduct affected (or potentially substantially affected) interstate commerce, then the Court possesses no legitimate reason to deny the government a chance to prove its case in chief. Only upon submission and consideration of all the government's evidence, once admitted, can the Court properly examine whether the government has met its legal and constitutional burden of proof, lest Selseth receive an unconstitutional conviction.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the government's motion to reconsider, **VACATES AND REVERSES** its previous ruling, and **DENIES** Selseth's motion to dismiss his indictment.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: June 17, 2004